IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JENNY L. COOKE,**

    **Plaintiff,**

    v.

        **Civil Action 2:19-cv-2561**
        **Judge Edmund A. Sargus**
        **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jenny L. Cooke, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

1

## I. BACKGROUND

Plaintiff filed her application for benefits in September 2013, alleging that she had been disabled since May 5, 2012, due to depression, osteoporosis, and stomach problems. (R. at 117–22, 142.) Plaintiff's application was denied throughout the administrative process, which included a denial by the Appeals Council. (R. at 1–6.) While Plaintiff commenced an action in this Court following the denial, the Court remanded the case in November 2017 pursuant to a joint stipulation to remand. (R. at 449–53.) Upon remand by the Appeals Counsel (R. at 454–58), Administrative Law Judge Timothy G. Keller ("ALJ") held a subsequent hearing on March 7, 2019, at which Plaintiff, appeared and testified. (R. at 410–23.) On April 1, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 388–404.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing on March 7, 2019 that from the period of the fall of 2012 until March 2017, she experienced right lower back pain, numbness and tingling in her legs, and that she would have to prop her legs up at night for relief. (R. at 414.) Her pain was exacerbated after 5-10 minutes of activity, such as bending over when mopping a floor. (*Id.*) She testified to having to rest for 15 minutes before starting any activity up again. (*Id.*) She said she was unable to lift much, estimating between 5-10 pounds before causing her back to

hurt. (R. at 415.) Plaintiff estimated she could walk for about 30 minutes and then would need to sit with her legs propped up. (*Id.*).

She also testified that she suffers from depression and stated that she saw a counselor once or twice, but did not continue to go, noting "I just felt they couldn't help me." (R. at 417.) Plaintiff confirmed that she was placed on medications by her primary care provider, but that she did not take the medications consistently. (*Id.*) She noted getting nervous around people and not wanting to being around others as well as difficulty concentrating on her television programs due to depression. (*Id.*)

Plaintiff was next asked about her stomach problems. She testified, "Well they said that I didn't have Celiac Disease, but I do have Celiac Disease, so I have to watch everything I eat, I have to read all the labels. If I get gluten, if I eat gluten, it really, it does a lot of things to me." (R. at 418.) Plaintiff testified that if she eats gluten, it causes pain, constipation, diarrhea, and mood swings. (R. at 419.)

### III.  MEDICAL RECORDS[1]

#### A.  Celiac Disease

The earliest record shows that Plaintiff was diagnosed with celiac disease in 1996. (R. at 286.) On August 6, 2012, Plaintiff saw primary care provider Regina Meyer, CNP, reporting bumps on her upper legs, right lower quadrant pain, constipation and diarrhea. CNP Meyer assessed hyperlipidemia, vitamin D deficiency, celiac disease and dermatitis. She gave Plaintiff a referral to schedule a colonoscopy. (R. at 257–58.)

---

[1] Plaintiff was found disabled as of March 2017 on a subsequent application for benefits. (R. at 413, 519–22.) Therefore, the summary of the medical record will cease as of that date.

3

Plaintiff saw CNP Meyer on March 27, 2013, for follow up visit related to her cholesterol levels and depression. (R. at 252–53.) Plaintiff reported that she had trouble sleeping at times, experienced feelings of isolation, had a low appetite, and often experienced gas pain or pressure. (*Id.*) CNP Meyer noted that Plaintiff had not taken most of the medication that had been prescribed. (*Id.*) When discussing getting a colonoscopy, the visit notes say that Plaintiff "wants to get the mammogram and bone density out of the way first" and that the topic would be revisited at the next appointment. (*Id.*)

At an appointment on July 24, 2013, Plaintiff reported pain under her left ribs, breast and arm, stomach, and bloating. (R. at 247–48.) CNP Meyer noted that Plaintiff felt pressure in the bowels and rectal area, had frequent bowel movements, and had right sided abdominal pain for a long time, which started before her pain on her left side. (*Id.*) Plaintiff had not yet scheduled a colonoscopy. (*Id.*) CNP Meyer also noted an anxious general appearance and mild bloating in the abdomen. (*Id.*) She assessed abdominal pain, cramps, chest pain and osteoporosis. (*Id.*)

Plaintiff underwent a colonoscopy on August 5, 2013, which revealed two benign polyps that were both removed. (R. at 193–94, 281–83.)

Plaintiff consulted with gastroenterologist David J. Wenzke, M.D., on September 4, 2013, reporting abdominal pain, celiac disease and bloating. (R. at 272.) On examination, Dr. Wenzke found normal consistency, no masses, tenderness to palpation in the lower left and right regions, no rebound or guarding with normal bowel sounds. (*Id.*) Dr. Wenzke assessed celiac disease, constipation, gas pain, bloating, flatulence, irritable bowel syndrome and abdominal

pain.  (*Id.*)  The following week, Plaintiff underwent a celiac antibody titer test, which yielded a negative result for endomysial antibodies.  (R. at 188.)

Plaintiff saw Dr. Wenzke for a follow-up appointment on November 1, 2013.  (R. at 269–71.)  Dr. Wenzke noted that Plaintiff was originally diagnosed with celiac disease in 1990 and that she has been maintaining a gluten-free diet with recommendations for probiotics, Citrucel, and Miralax to treat her lower abdominal discomfort, bloating, and constipation.  (*Id.*)  He further noted that Plaintiff had not tried the Miralax Citrucel yet.  (*Id.*)  Initiation of Citrucel and Miralax was recommended.  (*Id.*)  Dr. Wenzke opined that Plaintiff most likely had constipation-predominant irritable bowel syndrome that was likely exacerbated by significant stressors in her life.  (*Id.*)

When Plaintiff saw CNP Meyer on November 13, 2013, she reported improvement with her digestive issues.  (R. at 245.)  Then on February 11, 2014, Plaintiff reported stomach issues, anxiety, constipation, pain in the lower abdomen, and itchy hands and feet to CNP Meyer.  (R. at 302.)  CNP Meyer found Plaintiff's abdomen was soft, not distended, bowel sounds present, no guarding or rigidity, no masses palpated, and mild tenderness to palpation suprapubic region.  (*Id.*)  CNP Meyer assessed depression with anxiety, dermatitis, abdominal pain, and constipation.  (*Id.*)

Plaintiff saw Dr. Jennifer Briones, M.D. on May 31, 2016 for midabdominal pain, mucous without stool, mucous mixed with stool, painful bowel movements, and poor appetite.  (R. at 525–26.)  Dr. Briones assessed gastroenteritis and prescribed Cipro.  (*Id.*)

### B.     Osteoporosis

Plaintiff underwent a bone density test on April 13, 2013 due to being post-menopausal with clinical risk factors for osteoporotic factors of celiac disease/malabsorption syndrome. (R. at 200–03.) The test showed findings of osteoporosis. (*Id.*) It was advised that Plaintiff unergo a repeat test in two years. (R. at 200–03.)

At her May 2013 appointment with CNP Meyer (primarily for other issues), she listed osteoporosis as one of her diagnoses. (R. at 250–51.) Plaintiff's diagnosis of osteoporosis was also listed in medical records in September 2015, January 2015, and March 2015, and January 2017, by CNP Meyer. (R. at 328, 347–48, 351, 703–06.)

Plaintiff underwent another bone density scan in April 2015, which again showed that plaintiff was osteoporotic as defined by the WHO and was at an increased risk for bone fracture. (R. at 332–33.)

CNP Meyer completed a chronic pain residual functional capacity questionnaire in December 2015 in which she noted that she did not expect much improvement in Plaintiff's conditions and that Plaintiff's chronic pain would worsen with physical activity. (R. at 362–66.) CNP Meyer opined that Plaintiff likely could not walk more than two or three city blocks without needing to rest or experiencing severe pain, and that Plaintiff would have trouble sitting for more than one hour or standing for more than 30 minutes at a time. (R. at 363.) According to CNP Meyer, Plaintiff would require 10 minutes of walking every hour in order to properly

manage her chronic pain, and Plaintiff would need to lie down on average two to three times per day. (R. at 364.) CNP Meyer also noted that Plaintiff could lift ten pounds on an occasional basis. (R. at 365.) CNP Meyer concluded that Plaintiff's osteoporosis put her at risk of fracture and she did not believe that Plaintiff was capable of working full-time or on an ongoing part-time basis. (*Id.*) She further stated that Plaintiff has ongoing dizziness and even in her previous line of work, Plaintiff needed assistance to lift even the smallest patient. (R. at 366.)

### IV. ADMINISTRATIVE DECISION

On April 1, 2019, the ALJ issued his decision. (R. at 391–404.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. (R. at 393.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful work during the period from her alleged onset date of

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

May 5, 2012 through her date last insured of December 31, 2017.  (*Id.*)  The ALJ found that through the date last insured, Plaintiff had the severe impairment of depressive disorder.  (R. at 394.)  He further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 395–96.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, repetitive tasks.

(R. at 398.)

Relying on the Vocational Expert's testimony, the ALJ found that Plaintiff's limitations did not preclude her ability to do perform her past relevant work as a warehouse worker through her date last insured.  (R. at 402–03.).  The ALJ concluded that, through the date last insured, Plaintiff could perform other jobs that exist in significant numbers in the national economy.  (R. at 404.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time from May 5, 2012, the alleged onset date, through December 31, 2017, the date last insured.  (*Id.*)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ erred in failing to classify Plaintiff's celiac disease and osteoporosis as severe impairments and failing to consider these

impairments in determining Plaintiff's residual functional capacity ("RFC"). (ECF No. 13 at 14–23). She contends that the ALJ's decision is not supported by the evidence in the record. (*Id.*) Plaintiff contends that the ALJ's failure to classify these impairments as severe is not harmless because the ALJ subsequently failed to include consider these impairments in his RFC. (*Id.* at 15.) The Commissioner counters that the ALJ considered all of the evidence and reasonably evaluated Plaintiff's impairments when determining the RFC. (ECF No. 18 at 4–5.) The Commissioner also asserts that Plaintiff failed to meet her burden of showing that her impairments affect her more than minimally or identifying any additional limitations she believes should have been included in the RFC as a result of these impairments. (*Id.* at 6.)

### A. Classification of Impairments as Non-Severe

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation

process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). In the Sixth Circuit, "the step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Here, the ALJ concluded that Plaintiff's osteoporosis and celiac disease were non-severe, but that Plaintiff did have a severe impairment of depressive disorder. (R. at 394–95.) The ALJ provided the following analysis with respect to Plaintiff's osteoporosis:

> Bone density scan in April 2013, noted findings of osteoporosis with a repeat study advised in 2 years. In November 2013, the claimant reported back pain, with some paraspinal tenderness noted in the right mid to upper back on physical examination, and was prescribed Mobic. Notes in March 2014, showed the claimant was not taking anything for osteoporosis. In January 2015, the claimant reported lower back pain, with physical examination showing normal gait, normal motor system bilaterally, negative bilateral straight leg testing, but some decrease range of motion and tenderness in the lumbar spine. Physical therapy was ordered, with a note the claimant's osteoporosis may be contributing to some of her pain. Bone density report in April 2015, confirmed the presence of osteoporosis with a repeat study advised in 2 years.

(R. at 394, internal citations omitted.) The ALJ concluded that Plaintiff's osteoporosis was non-severe because "the record does not support that the claimant ever engaged in any treatment for her condition," and that Plaintiff's osteoporosis and related symptomology caused only "transient and mild symptoms and no functional limitations." (R. at 394–95.)

The ALJ also found Plaintiff's celiac disease to be non-severe, explaining as follows:

11

> The record shows a remote diagnosis of celiac disease in 1996. On August 6, 2012, the claimant reported some alternating constipation and diarrhea and was advised to schedule a colonoscopy based on a prior referral. Follow up in July 2013, noted that the claimant hand not had the colonoscopy performed, despite reports of abdominal pain and cramping, with a recommendation to schedule the colonoscopy again advised. In correspondence dated August 5, 2013, James Edison, M.D., noted that polyps removed during a recent colonoscopy were both benign - 1 adenoma and 1 hyperplastic with a repeat procedure recommended in 5 years. Gastroenterology follow up in September 2013, noted the claimant's long history of celiac disease maintained on gluten free diet, with recommendations for probiotics, Citrucel, and Miralax to treat lower abdominal discomfort, bloating, and constipation. Gastroenterology follow up on November 1, 2013, showed the claimant reporting bloating and constipation, and had not tried Citrucel and Miralax despite prior advice to do so, with significant stressors reported. Continued medication management and initiation of Citrucel and Miralax was recommended. Primary care notes in November 2013, however, showed the claimant reported improvement with her digestive issues. Follow up in February 2014, showed the claimant had not been taking Citrucel and Miralax as ordered, with pain in her lower abdomen.

(R. at 395.) The ALJ concluded that Plaintiff's celiac disease was non-severe because the record shows "inconsistent compliance with treatment recommendations" and that "there is no indication that celiac disease or related symptomology caused anything more than transient and/or mild symptoms and no functional limitation." (R. at 395.) Importantly, the ALJ *did* find that Plaintiff had the severe impairment of depression and therefore went on to analyze Plaintiff's residual functional capacity.

The Undersigned finds no error in the ALJ's conclusion at step two that, during the relevant time period, Plaintiff's osteoporosis and celiac disease were non-severe impairments. Because he found that Plaintiff had the severe impairment of depressive disorder, his determination that the conditions of osteoporosis and celiac disease is of little consequence. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (where the ALJ found that the claimant had a severe impairment, "[t]he fact that some of [claimant's]

impairments were not deemed to be severe at step two is [] legally irrelevant."); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (when an ALJ finds that a claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error).

### B. The ALJ's RFC Assessment

Plaintiff further asserts that the ALJ erred in failing to consider Plaintiff's osteoporosis and celiac disease in formulating his assessed RFC. (ECF No. 13.)

Where, as here, the ALJ determines that a claimant has a severe impairment at step two of the analysis, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x. 779, 787 (6th Cir. 2009) (holding that, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe").

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). In formulating an RFC, an ALJ is only required to incorporate those limitations he or she finds credible. *See, e.g.*, *Irvin v. Soc. Sec. Admin.*, 573 Fed.Appx. 498, 502 (6th Cir. 2014) ("Because

the ALJ found that [the medical source's] assessment of [the plaintiff's] limitations was not credible, he was not required to incorporate the limitations assessed by her into his RFC determination."  (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff correctly points out that in assessing his RFC, the ALJ must consider the limiting effects of both her severe and non-severe impairments.  *See Pompa*, 73 F. App'x at 803 (citing 20 C.F.R. § 404.1545(e)).  Contrary to Plaintiff's contention, however, the ALJ's determination that she had mild impairment does not require inclusion of limitations related to that impairment in the RFC.  *See, e.g., Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13–14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . .").

Regardless of whether an impairment is severe or non-severe, an ALJ need only include limitations arising from an impairment if it affects a claimant's capacity to work.  *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.  A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal quotation marks and citations omitted).

Here, Plaintiff contends that the ALJ failed to consider her osteoporosis and celiac disease in assessing her RFC because they were not specifically discussed after step two of the sequential analysis. The Sixth Circuit has made clear that an ALJ's decision must be read as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (explaining that an ALJ's decision must be read as a whole). Although the ALJ did not analyze Plaintiff's osteoporosis and celiac disease in the section of his decision articulating Plaintiff's RFC, his discussion at step two demonstrates that he reasonably considered whether these impairments caused functional limitations and concluded that they did not. (*See* R. at 394–95.) In so concluding, the ALJ thoroughly considered Plaintiff's medical records, treatment history (and lack of treatment history), the opinion evidence, and Plaintiff's own testimony.

Substantial evidence supports these conclusions. As to Plaintiff's osteoporosis, bone density scans in 2013 and 2015 showed osteoporosis but that Plaintiff never sought treatment and that, despite her continued complaints of pain, she was found to have a normal gait, normal muscle strength, and negative straight leg raising test findings. (R. at 200–06, 300, 330–41, 345, 351.) As to her celiac disease, as the ALJ discussed, the disease is maintained on a gluten-free diet with recommendations for certain medications to improve digestive issues. (R. at 395, citing R. at 269.) Further, medical records show that Plaintiff's digestive issues had improved and, further, that she was not taking the medications as ordered. (R. at 245, 269, 302.) The ALJ specifically stated in his analysis of these impairments that neither created a functional limitation nor did they affect Plaintiff's ability to work. (R. at 394–95.)

Moving on to the opinion evidence, the ALJ also thoroughly discussed CNP Meyer's questionnaire in which she indicated that Plaintiff would need work limitations for osteoporosis and celiac disease. (R. at 401–02.) The ALJ assigned this opinion little weight, finding that her opinions and recommendations were not supported by the record evidence identified above. (*Id.*) The ALJ noted that, despite CNP Meyer's recommendation for extreme limitations, "the record shows intermittent treatment and follow up, with generally no medication usage despite orders to the contrary, and generally unremarkable examination findings during the period at issue." (R. at 402.) And importantly, the ALJ was not persuaded by Plaintiff's subjective complaints and alleged severity of her limitations. (R. at 402.)

The fact that Plaintiff was diagnosed with osteoporosis and celiac disease does not necessarily mean that these conditions impose work-related limitations. *See Higgs,* 880 F.3d at 863 (mere diagnosis of an impairment does not establish the condition is disabling); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929–30 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time."). Nor was the ALJ obligated to cite to every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec,* 167 F. App'x 496, 508 (6th Cir. 2006).

Based on the foregoing, the Undersigned finds that the ALJ properly considered Plaintiff's osteoporosis and celiac disease and reasonably concluded that limitations attributable to these impairments were not warranted in the RFC. The ALJ explained his rationale for finding that these impairments did not cause any functional limitations, which included

consideration of Plaintiff's allegations and hearing testimony; treatment records; lack of treatment history; and the opinion evidence. *See* R. at 394–95. The Undersigned therefore concludes that the ALJ properly considered Plaintiff's osteoporosis and celiac disease in assessing his RFC and that substantial evidence supports the ALJ's decision to omit limitations attributable to these impairments. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's sole contention of error be **OVERRULED**

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Error and **AFFIRM** the Commissioner's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: July 29, 2020**              /s/ *Elizabeth A. Preston Deavers*
                                     **ELIZABETH A. PRESTON DEAVERS**
                                     **CHIEF UNITED STATES MAGISTRATE JUDGE**